UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| LORI A. MODY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:07CV428 |
| ) | |
| ENTERPRISE INFORMATION ) | |
| MANAGEMENT, INC., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF
DEFENDANT DAVID B. SPRENKLE'S
RULE 12(b)(6) MOTION TO DISMISS COMPLAINT**

Defendant David B. Sprenkle, by counsel, hereby submits this Memorandum in support of his Rule 12(b)(6) Motion to Dismiss Counts I – VI of the Complaint.

**I.   PRELIMINARY STATEMENT**

On August 2, 2004, Win2, LLC – acting through its CEO, Lori A. Mody – purchased David Sprenkle's 49% ownership interest in Enterprise Information Management, Inc. ("EIM"), a computer software services company located in Arlington, Virginia. Now, more than two years later, Win2 and Ms. Mody ask this Court to rescind the sale based on their "discovery" that Brett Pfeffer – Win2's President at the time – also was a paid consultant to EIM. Plaintiffs plead no facts describing how the consultancy caused them injury or why the long-ago completed sale should be annulled. Instead, they make conclusionary allegations that EIM and its owners, David Sprenkle and Bruce Lyman, together with Mr. Pfeffer, "concealed" the consultancy and thereby – axiomatically, it seems – engaged in securities fraud, breach of contract, common-law

fraud and civil conspiracy. Plaintiffs' allegations do not reasonably support the claims asserted in the Complaint and fail the minimum pleading requirements imposed by Rule 12(b)(6).

## II. FACTUAL BACKGROUND

In their Complaint, Plaintiffs Win2, LLC and Lori A. Mody allege that:

<u>Ms. Mody and Mr. Pfeffer's Business Relationship</u>

In 2002, Plaintiff Lori A. Mody founded a company called Win2, LLC for the purpose of investing in technology companies. (Compl. ¶ 12.) In 2003, Ms. Mody's friend, now-defendant Brett Pfeffer, approached her with a business proposal and asked to serve as Win2's President. (Compl. ¶¶ 12-13.) Mr. Pfeffer told Ms. Mody that he would focus his full attention on Win2 and end his pre-existing business relationships, including his then-ongoing consulting relationship with EIM, which paid him approximately $10,000 a month. (Compl. ¶¶ 13, 17.) In January 2004, Ms. Mody hired Mr. Pfeffer as President of Win2, unaware that he continued to work as a consultant to EIM. (Compl. ¶¶ 13-14.)

<u>Sale of EIM</u>

EIM is a closely held corporation that was owned by David Sprenkle and Bruce Lyman. (Compl. ¶ 14.) In 2004, Mr. Sprenkle and Mr. Lyman no longer wished to work together, and decided that Mr. Sprenkle would sell his EIM shares to a third party and end his relationship with the company. (Id.)

On March 3, 2004, Mr. Pfeffer set up a meeting among Ms. Mody, her lawyer Joel Birken, and EIM and its attorney, to discuss Win2's potential purchase of Mr. Sprenkle's interest in EIM. (Compl. ¶ 15.) The lawyers and their clients began preliminary sale negotiations and agreed to reconvene later. (Compl. ¶ 15.) On March 5, 2004, Mr. Lyman e-mailed Mr. Pfeffer and asked whether he had "[a]ny feedback from the meeting between [attorney] Joel [Birken]

2

and Lori [Mody]." (Compl. ¶ 15.)[1] The parties continued negotiating the terms of a stock purchase, and Ms. Mody was provided with financial statements, a payroll summary sheet listing EIM's employees, and copies of EIM's employee contracts. (Compl. ¶ 17.) Mr. Pfeffer's role as a consultant to EIM was not listed on any of the documents provided to Ms. Mody. (Compl. ¶ 17.)

The Stock Purchase Agreement and Its Representations

On August 2, 2004, Win2, EIM and Mr. Sprenkle entered into a Stock Purchase Agreement ("SPA") under which Win2 agreed to purchase 49% of EIM's shares from Mr. Sprenkle for $3.2 million. (Compl. Ex. 1.) Ms. Mody signed the SPA as Win2's CEO, but was not personally a party to the transaction.

In the SPA, the Seller, Mr. Sprenkle, made certain representations to Win2, as Purchaser of EIM's stock, including the following:

- "Except as set forth in the attached Schedule 4.13(a), [EIM] is not a party to or otherwise bound by any written or oral ... (6) contract for the employment of any officer, employee or other person on a full-time or consulting [basis] <u>which is not terminable on notice without cost or other liability to [EIM], except normal severance arrangements and accrued vacation pay</u>." (Compl. Ex. 1 at § 4.13(a)(6) (emphasis added).)

- "Schedule 4.18(b) attached hereto sets forth a true, correct, and complete list of the current employees of [EIM]." (Compl. Ex. 1 at § 4.18(b).)

- None of the financial information or documents delivered to Win2 in connection with the SPA, including the SPA itself, "contains any untrue statement of a material fact, or omits any statement of a material fact necessary in order to make the statements contained herein or therein not misleading." (Compl. Ex. 1 § 4.21.)

- EIM, Mr. Sprenkle and Mr. Lyman "have no contract, arrangement or understanding with any broker, finder or similar agent with respect to the transactions contemplated by this [SPA]." (Compl. Ex. 1 at § 4.24.)

---

[1] The Complaint also cites another email exchange between Mr. Lyman and Mr. Pfeffer, wherein Mr. Lyman states that a draft brief created by Mr. Sprenkle was "misleading and borders on lying." (Compl. ¶ 16.) But Plaintiffs do not allege that any misleading statements were included in any final brief they received from Defendants.

3

Each of the parties to the SPA was represented by and received the advice of counsel. Win2 was represented by Joel Birken of Rees, Broome & Diaz, P.C.; Mr. Sprenkle was represented by David Casadante, Esq.; and EIM was represented by Mark Goldstein of Paley Rothman. (Compl. Ex. 1 at §§ 10.2, 10.6.)

According to the Complaint, Ms. Mody did not learn until June 2006 that Mr. Pfeffer had continued his consulting work for EIM. (Compl. ¶ 25.) However, the Complaint acknowledges that EIM's business records – which Ms. Mody apparently did not review during the two years before she "discovered" the claims asserted in this suit – document that Mr. Pfeffer was a paid consultant for EIM. (Compl. ¶ 25.)

Alleged Misrepresentations and Omissions of Fact

The Complaint alleges the following misrepresentations and omissions, which are at the heart of Plaintiffs' claims:

1. "That EIM had a written or oral employment contract with Pfeffer that was not disclosed on Schedule 4.13(a);"[2]

2. "That Schedule 4.18(b) to the SPA did not list Pfeffer as an employee;"[3]

3. "That the list of employees delivered by EIM, Lyman, and Sprenkle (through Pfeffer) prior to Closing did not include Pfeffer;"[4] and

4. "That Pfeffer acted as EIM's broker by convincing Mody to purchase the Shares."

(Compl. ¶ 25.)

---

[2] Plaintiffs' restatement of this provision mischaracterizes the representations made in the SPA. Schedule 4.13(a) was to include only those employees, including consultants, whom EIM could not terminate on notice without incurring costs or other liabilities. See Compl. Ex. 1 at § 4.13(6); see also discussion in Part IV.B., infra.

[3] Plaintiffs concede in the Complaint that Pfeffer was a consultant rather than an employee. (Compl. ¶¶ 7, 14, 17, 25.)

[4] See above, n.3.

The Complaint further alleges that Ms. Mody would not have entered into the SPA had she known of Mr. Pfeffer's relationship with EIM. (Compl. ¶ 26.)

Because none of the statements or omissions enumerated above is material, Plaintiffs' Complaint fails to state a claim upon which relief can be granted. The Complaint is further defective in that it also fails to state facts supporting any allegation that the statements or omissions caused any damages to Plaintiffs.

## III. STANDARD FOR DISMISSAL UNDER RULE 12(B)(6)

Until very recently, it was common for courts to hold that a complaint could not be dismissed unless the plaintiff could prove "no set of facts" that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 46 (1957); see also Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). But the Supreme Court recently "retired" the "no set of facts" language from Conley,[5] holding that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–236 (3d ed. 2004) ("[T]he pleading must contain

---

[5] The Supreme Court noted that the Conley dismissal standard had repeatedly been taken out of context and was therefore widely misunderstood:

> Conley's "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the Conley Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement.

Bell Atlantic, 127 S.Ct. at 1969.

5

something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")). The Fourth Circuit has similarly held that "courts need not credit conclusory legal terms and allegations that are not reasonably supported by factual allegations." Eplus Tech., Inc. v. Nat'l RR. Passenger Corp., 407 F. Supp. 2d 758, 761 (E.D. Va. 2005) (citing Taubman Realty Group LP v. Mineta, 320 F.3d 475, 479 (4th Cir. 2003); Young v. City of Mt. Ranier, 238 F.3d 567, 577 (4th Cir. 2001)).

## IV. ARGUMENT

Plaintiffs' Complaint incorporates six counts:

- Counts I and II allege securities fraud violations pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, and are asserted against all Defendants (hereinafter the "Rule 10b-5 claims");

- Counts III and IV allege breach of contract by Defendants EIM and David Sprenkle (hereinafter the "breach of contract claims");

- Count V alleges common-law fraud by all Defendants (hereinafter the "fraud claim"); and

- Count VI alleges civil conspiracy to commit fraud and is asserted against all Defendants (hereinafter the "conspiracy claim").

The factual deficiencies of the Complaint are plain from the face of the pleading, and cannot be saved through the application of "labels and conclusions." Bell Atlantic, 127 S.Ct. at 1965. All of the counts of the Complaint should be dismissed.

### A. Plaintiff Lori A. Mody Lacks Standing to Sue.

As a preliminary matter, Ms. Mody must be dismissed as a plaintiff because she lacks standing to sue on any of the claims alleged in the Complaint.

6

### 1. Ms. Mody Did Not Purchase Securities and Lacks Standing to Assert the Rule 10b-5 Claims.

Section 10(b) and Rule 10b-5 both prohibit fraud "in connection with the purchase or sale" of securities. See 15 U.S.C. § 78j(b); SEC R. 10b-5. This language has been interpreted consistently to mean that "the plaintiff class for purposes of § 10(b) and Rule 10b-5 private damage actions is limited to purchasers and sellers of securities." Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 731-32 (1975); see also Advanced Resources Int'l, Inc. v. Tri-Star Petroleum Co., 4 F.3d 327, 331-33 (4th Cir. 1993). Win2, not Ms. Mody, was the purchaser of shares in EIM. (Compl. Ex. 1.) Since Ms. Mody was neither a purchaser nor seller of securities, she lacks standing to bring Rule 10b-5 claims against Defendants.

### 2. Ms. Mody Was Not a Party to the SPA and Lacks Standing to Sue for Breach of Contract.

It is a long-standing rule in Virginia that a breach of contract action "must be brought in the name of the party in whom the legal interest was vested, and that this legal interest was vested in the person to whom the promise was made, and consequently that he or his privy [is] the only person who [can] sue in a court of law upon such contract." Thacker v. Hubbard, 122 Va. 379, 387, 94 S.E. 929, 931 (1918). The Thacker Court noted an exception only for third-party beneficiaries: "[I]n contracts not under seal, it has been held, for two centuries or more, that any one for whose benefit the contract was made may sue upon it." Id. at 387, 94 S.E. at 931. Courts will enforce "third-party beneficiary" contracts only when "[t]he third party ... show[s] that the parties to the contract clearly and definitely intended it to confer a benefit upon him." Professional Realty v. Bender, 216 Va. 737, 739, 222 S.E.2d 810, 812 (1976).

The parties to the SPA were Win2, EIM and Mr. Sprenkle – not Ms. Mody. Ms. Mody is not a third-party beneficiary of the SPA and cannot show that the parties to that agreement

"clearly and definitely" intended to confer a benefit upon her personally. There is no mention of Ms. Mody in the provisions of the SPA, and she signed the agreement exclusively in her capacity as CEO of Win2. Thus, Ms. Mody lacks standing to bring breach of contract claims against Defendants.

### 3. Ms. Mody Also Lacks Standing on the Fraud and Conspiracy Claims.

Finally, Ms. Mody lacks standing to assert claims based upon fraud and conspiracy. Under Virginia law, "[i]t is fundamental that bare allegations of fraud will not of themselves, support an action for damages – the facts showing the fraud <u>and the resulting damage</u> must be alleged." <u>Lloyd v. Smith</u>, 150 Va. 132, 149 (1928) (emphasis added). Where a plaintiff has not alleged an injury, he does not have standing to sue. <u>313 Freemason v. Freemason Assocs., Inc.</u>, 59 Va. Cir. 407, 2002 WL 31990272, at *5 (Va. Cir. Ct. 2002) (citing <u>Lloyd</u>, 150 Va. at 149). Neither Ms. Mody nor Win2 have pled any facts supporting the misrepresentations they allege or describing how they have suffered injury or damages as a result of the "secret" consultancy. Both the fraud claim and the conspiracy claim are made "in connection with the sale of the Shares." (Compl. ¶¶ 64, 70.) Win2 purchased the shares and was a party to the SPA, whereas Ms. Mody was not a party to that transaction. Ms. Mody therefore cannot allege an injury stemming from the sale, and lacks standing to bring the claims of fraud and conspiracy to commit fraud.

### B. Plaintiffs Fail to Allege Any Actionable Misrepresentations or Omissions.

The Complaint and exhibits thereto show that Defendants did not misrepresent or fail to disclose any fact they were obliged to disclose. To support their claims, Plaintiffs rely on certain provisions of the SPA that they now say required disclosure of Mr. Pfeffer's consultancy to EIM. Specifically, Plaintiffs point to SPA § 4.13(a)(6) and § 4.18(b), and aver "[t]hat EIM had a

8

written or oral employment contract with Pfeffer that was not disclosed on Schedule 4.13(a)," "[t]hat Schedule 4.18(b) to the SPA did not list Pfeffer as an employee," and "[t]hat the list of employees . . . did not include Pfeffer." Plaintiffs also claim that "Pfeffer acted as EIM's broker by convincing Mody to purchase the Shares." (Compl. ¶¶ 21 & 25.)

The plain language of the SPA shows that the absence of disclosure of Mr. Pfeffer's consultancy cannot amount to an actionable misrepresentation or omission. According to the terms of § 4.13(a)(6), EIM and Mr. Sprenkle were not required to disclose all EIM employees and consultants. They only were required to disclose those employees and consultants whose employment contracts would not be "terminable on notice without cost or other liability to [EIM], except normal severance arrangements and accrued vacation pay." (Compl. Ex. 1 at § 4.13(a)(6).) Plaintiffs have not alleged that Mr. Pfeffer had such an employment contract with EIM, or that Mr. Pfeffer's termination as a consultant would have brought costs or liability upon EIM. Likewise, § 4.18(b) states that Schedule 4.18(b) is a "list of the current employees" of EIM. (Compl. Ex. 1 at § 4.18(b).) Plaintiffs repeatedly acknowledge in the Complaint that Mr. Pfeffer was a consultant, not an employee. Therefore, it seems indisputable that EIM and Mr. Sprenkle had no obligation to include Mr. Pfeffer on any employee list provided by EIM to Win2.

Finally, Plaintiffs also contend that Mr. Pfeffer acted as a broker for EIM "by convincing Mody to purchase the Shares." (Compl. ¶ 25.) Yet, beyond this conclusionary assertion, they set forth no facts describing how Mr. Pfeffer, who had a relationship with EIM long before the sale to Win2, can accurately be characterized as a "broker" for the sale. (Compl. ¶ 21.) As Plaintiffs acknowledge in the Complaint, Mr. Pfeffer had been retained by EIM on a consulting basis since early 2003, more than a year before the SPA, and perhaps a year or more before Mr. Pfeffer

"coordinated a meeting" among Ms. Mody, her lawyer, and EIM. (Compl. ¶¶ 14-15.) Plaintiffs also fail to describe how Mr. Pfeffer allegedly convinced Ms. Mody to cause Win2 to buy EIM's stock. The Complaint fails to allege any representations made by Mr. Pfeffer to Ms. Mody that were significant or improper. Plaintiffs merely make bare allegations that Ms. Mody relied on "Pfeffer's advice" – and nowhere allege what that advice consisted of. (Compl. ¶¶ 17, 24.)

The absence of actionable "misrepresentations" or "omissions" supported by well-pled facts is an independent basis for dismissal of the Complaint.

### C. The Rule 10b-5 Claims (Counts I & II) Fail to Allege Facts Showing Materiality or Causation.

#### 1. The Alleged Misrepresentations or Omissions Were Not Material.

A valid claim under Rule 10b-5 requires, <u>inter alia</u>, that the defendant make "a false statement or omission of <u>material</u> fact." <u>Ganser v. Bd. of Supervisors</u>, 103 F.3d 351, 356 (4th Cir. 1996) (emphasis added). The law "decidedly do[es] <u>not</u> prohibit <u>any</u> misrepresentation – no matter how willful, objectionable, or flatly false – of <u>immaterial</u> facts, even if it induces reactions from investors that, in hindsight or otherwise, might make the misrepresentation appear material." <u>Greenhouse v. MCG Capital Corp.</u>, 392 F.3d 650, 656 (4th Cir. 2004) (emphasis in original). Courts use an objective standard to determine whether statements or omissions were material. <u>See, e.g.</u>, <u>Ganser</u>, 103 F.3d at 356. Specifically, a fact is material if there is "a substantial likelihood that the ... fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." <u>Basic Inc. v. Levinson</u>, 485 U.S. 224, 231-32 (1988) (citing <u>TSC Indus., Inc. v. Northway, Inc.</u>, 426 U.S. 438, 449 (1976)). Applying this standard, "'even lies are not actionable' unless the lie is something that alters the total mix of information available to a reasonable investor." <u>Greenhouse</u>, 392 F.3d at 656 (quoting <u>Phillips v. LCI Int'l, Inc.</u>, 190 F.3d 609, 617 (4th Cir. 1999)). As a procedural

matter, "materiality may be resolved by a court as a matter of law." Greenhouse, 392 F.3d at 657.

The total mix of information provided to Ms. Mody during the due diligence process included financial statements and various schedules to the SPA.[6] (Compl. ¶ 17.) It also included the information exchanged during the meetings among Ms. Mody, Mr. Lyman, and their respective attorneys. The fact that Mr. Pfeffer had not, as of August 2004, terminated his consulting arrangement with EIM was not a fact that – in the eyes of a reasonable investor – would have by itself altered the information available about EIM.

The Complaint states in conclusory fashion that "[r]elying on Pfeffer's advice, Mody moved forward with the transaction" and that "[a]s a direct result of Pfeffer's secret broker relationship with EIM, Mody entered into a $3.2 million transaction that she otherwise would not have." (Compl. ¶¶ 17, 26.) However, the actual facts alleged in the Complaint limit Mr. Pfeffer's interactions with Ms. Mody to his introducing her to EIM and then providing her with the financial and transactional documents from EIM. There are no facts alleged that would have changed the total mix of information available to a reasonable potential investor. Plaintiffs' repeated assertions that the alleged misrepresentations and omissions were "material" is not sufficient to survive the Rule 12(b)(6) standard. See, e.g., Bell Atlantic, 127 S.Ct. at 1964-65; Eplus Tech., Inc., 407 F. Supp. 2d at 761. Because of this deficiency, the Rule 10b-5 claims must be dismissed.

---

[6] The schedules included, to name a few, EIM's Articles of Incorporation (Schedule 4.1(e)); EIM's Bylaws (Schedule 4.1(f)); and a list of EIM's intangible property (Schedule 4.7). (Compl. Ex. 1 at §§ 4.1, 4.7.)

## 2. The Alleged Misrepresentations or Omissions Caused No Loss.

In addition to materiality, a plaintiff in a Rule 10b-5 action must also establish two separate types of causation: transaction causation and loss causation. Ganser, 103 F.3d at 360; see also Morris v. Wachovia Securities, Inc., 277 F. Supp. 2d 622, 632 (E.D. Va. 2003). Transaction causation means "that the alleged fraudulent statement or omission caused the plaintiff to engage in the transaction in question." Morris, 277 F. Supp. 2d at 632. Loss causation means "that the alleged fraudulent statement or omission was the cause of the actual loss suffered." Id. (holding that because plaintiff "fail[ed] to identify any economic harm attributable to [defendant's] alleged misrepresentations and omissions," plaintiff "failed to satisfy the loss causation component of the causation element").

Like the plaintiff in Morris, Plaintiffs have failed to set forth any economic injury attributable to Mr. Sprenkle's alleged misrepresentations and omissions. Plaintiffs allege no actual damages – only that Ms. Mody allegedly would not have entered into the transaction had she known Mr. Pfeffer was still a consultant to EIM (transactional causation). Plaintiffs have not alleged the requisite loss causation to establish a Rule 10b-5 claim. Accordingly, the Rule 10b-5 claims must be dismissed.

### D. The Breach of Contract Claims (Counts III & IV) Fail to Allege Facts Showing Materiality or Causation.

For similar reasons, Plaintiffs' contract claims must be dismissed. It is well settled that "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). When a party to a contract demands rescission based upon a breach, the other party's breach must have been "so material and substantial in nature that it

affects the very essence of the contract and serves to defeat the object of the parties." Matzelle v. Pratt, 332 F. Supp. 1010, 1012 (E.D. Va. 1971); see also Horton v. Horton, 254 Va. 111, 115 487 S.E.2d 200, 204 (1997) ("A material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract."); Neely v. White, 177 Va. 358, 366, 14 S.E.2d 337, 341 (1941) ("[T]he act failed to be performed must go to the root of the contract.").

The breaches alleged in the Complaint are not supported by the SPA. Plaintiffs allege that Defendants breached the SPA because Mr. Pfeffer was never listed or named as an EIM employee. Yet Plaintiffs repeatedly acknowledge in the Complaint that Mr. Pfeffer was a consultant, not an employee. Moreover, the alleged breaches were not material. The "root of the contract" was the transfer of 49% of shares in a closely-held company from Mr. Sprenkle to Win2. Plaintiffs do not – and cannot – allege that Defendants failed to transfer those shares to Win2. The possibility that Plaintiffs are suffering from a belated "buyer's remorse" does not entitle them to rescind the SPA years after the sale.

In addition, a plaintiff "must plead damages to prevail on a breach of contract claim." Nigh v. Koons Buick Pontiac GMC, Inc., 143 F. Supp. 2d 535, 557 (E.D. Va. 2001). Those damages must have been caused by the particular breach. See Ulloa v. QSP, Inc., 271 Va. 72, 79, 624 S.E.2d 43, 48 (2006); Filak, 267 Va. at 619, 594 S.E.2d at 614. The Complaint alleges no facts that support that claim. As explained above in the discussion of Plaintiffs' Rule 10b-5 claims, the Complaint fails to set forth any damages that can be attributed to Mr. Sprenkle's alleged misrepresentations and omissions. Plaintiffs' bald statement that "[a]s a result of Defendants EIM's and Sprenkle's breach of the SPA, Plaintiffs have sustained actual damages," Compl. ¶ 55, is "not reasonably supported by factual allegations," Eplus Tech., Inc., 407 F. Supp.

2d at 761. Without the required element of damages, the contract claims cannot state a claim upon which relief may be granted.

### E. The Fraud Claim (Count V) Fails to Allege Facts Showing Materiality or Damages.

Under Virginia common law, the elements of fraud are: "(i) a false representation or omission; (ii) of a material fact; (iii) made intentionally and knowingly; (iv) with intent to mislead; (v) reliance by the party misled; and (vi) resulting damage to the party misled." Brown v. Slenker, 197 F. Supp. 2d 497, 506 n.16 (E.D. Va. 2002); accord Evaluation Research Corp. v. Alequin, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994). The elements of fraud must be charged distinctly, and with particularity. See, e.g., Bank of Pocahontas v. Ferimer, 161 Va. 37, 40-41, 170 S.E. 591, 592 (1933); Dobbs v. Dobbs, 150 Va. 386, 393, 143 S.E. 702, 704 (1928). Regarding the element of damages, "the facts showing the fraud and the resulting damage must be alleged." Lloyd v. Smith, 150 Va. 132, 149, 142 S.E. 363, 367 (1928) (emphasis added); see also Community Bank v. Wright, 221 Va. 172, 175, 267 S.E.2d 158, 160 (1980) (holding that "[a]n allegation of fraud in the abstract does not give rise to a cause of action; it must be accompanied by allegation and proof of damage").

As explained above in the discussion of Plaintiffs' Rule 10b-5 claims, the Complaint fails to describe any damages that can be attributed to Defendants' alleged misrepresentations and omissions. In their fraud claim, Plaintiffs allege "substantial economic loss," (Compl. ¶ 66), but provide no factual support for the damages they insist they suffered. This mere "formulaic recitation of the elements" of fraud is not sufficient to set forth a claim. Bell Atlantic, 127 S.Ct. at 1965.

In addition, as with the Rule 10b-5 claims, "[c]entral to a Virginia fraud claim is the requirement for a misrepresentation of a material fact." Brown, 197 F. Supp. 2d at 506. Under

Virginia law, a fact is material if it "influences a person to enter into a contract," if it "deceives him and induces him to act," or if "without it the transaction would not have occurred." Packard Norfolk, Inc. v. Miller, 198 Va. 557, 95 S.E.2d 207, 211-12 (1956). Defendants made no misrepresentations or omissions of any fact – material or otherwise – based on the SPA. The facts that Plaintiffs allege Defendants misrepresented or omitted were not material to the sale of Mr. Sprenkle's shares in EIM to Win2. Win2 purchased shares in EIM because it was interested in investing in technology companies, not because Mr. Pfeffer was not an employee of that company. (Compl. ¶ 12.) Cf. Glaser v. Enzo Biochem, Inc., 126 Fed. Appx. 593, 600 (4th Cir. 2005) (holding that the effectiveness of a biotechnology company's newly developed HIV treatment was a material fact to its investors). Plaintiffs make no factual allegations that Mr. Pfeffer's consultancy with EIM negatively affected the stock purchase – for example, that Mr. Pfeffer in his role as EIM's consultant provided Win2 with false financial statements or misleading forecasts. Because the fact of Mr. Pfeffer's relationship with EIM was not material to the transaction, Plaintiffs' fraud claim must be dismissed.

F.  **Plaintiffs Fail to State a Claim for Civil Conspiracy (Count VI).**

For the reasons explained above, the allegations recited in the Complaint fail to state a claim for fraud against Mr. Sprenkle or the other Defendants in this case. The conspiracy count necessarily fails as well.

Plaintiffs' conspiracy claim must be dismissed for two additional reasons. First, the Fourth Circuit has held there can be no liability for civil conspiracy in connection with securities fraud. Glaser, 126 Fed. Appx. at 599. Second, Plaintiffs fail to state with the requisite particularity the elements of conspiracy. Under Virginia common law, "a civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish some criminal or

unlawful purpose or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means." Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) (citing Hechler Chevrolet, Inc. v. General Motors Corp., 230 Va. 396, 402, 337 S.E.2d 744 (1985)). To state a claim for civil conspiracy, "the plaintiff must first allege that the defendants combined together to effect a 'preconceived plan and unity of design and purpose, for the common design is the essence of conspiracy.'" Bay Tobacco, 261 F. Supp. 2d at 499 (quoting Bull v. Logetronics, 323 F. Supp. 115, 131 (E.D. Va. 1971)). A plaintiff must therefore "at least plead the requisite concert of action and unity of purpose in more than 'mere conclusory language.'" Id. (quoting Lewis v. Gupta, 54 F. Supp. 2d 611, 618)); see also GEICO v. Google, Inc., 330 F. Supp. 2d 700, 705 (E.D. Va. 2004) (holding that conspiracy, "like fraud, must be pleaded with particularity"). To survive a motion to dismiss, a plaintiff must also allege an unlawful act or unlawful purpose because "[t]here can be no conspiracy to do an act which the law allows." Hechler Chevrolet, 230 Va. at 402, 337 S.E.2d at 748; accord Bay Tobacco, 261 F. Supp. 2d at 499.

Plaintiffs fail to meet the stringent pleading standard required for common-law claims of conspiracy. Although the conspiracy claim incorporates all of the facts alleged in the Complaint, the actual facts alleged – as opposed to the conclusory language that Plaintiffs offer instead – are not sufficiently specific to support Plaintiffs' claim. The facts set forth in the Complaint do not establish that Defendants acted with unity of purpose to commit an unlawful act. The factual allegations do not show that Mr. Sprenkle, in particular, engaged in any preconceived plan with EIM, Mr. Lyman or Mr. Pfeffer. Rather, the Complaint alleges that Mr. Sprenkle made representations – accurate representations, as explained in Part IV.B., supra – that Mr. Pfeffer

was not an employee of EIM. (Compl. ¶¶ 21-22.) Because the Complaint lacks particular factual support for the conspiracy claim, Plaintiffs' conspiracy count also must be dismissed.

## V. CONCLUSION

For the reasons stated above, Defendant David B. Sprenkle respectfully requests that the Court dismiss Counts I – VI of the Complaint for failure to state a claim upon which relief can be granted.

DATED: June 19, 2007

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/
John P. Rowley III, VSB No. 19804
Jennifer E. Dure, VSB No. 48247
1600 Tysons Blvd., Suite 700
McLean, VA 22102
703-720-8600
720-720-8610 (Facsimile)
john.rowley@hklaw.com
jennifer.dure@hklaw.com

Counsel for Defendant David B. Sprenkle

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF), to the following:

Hugh Marbury
Mitka Baker
DLA PIPER US LLP
6225 Smith Avenue
Baltimore, MD 21209

Counsel for Plaintiffs

David W. Goewey
Vincent E. Verrocchio
VENABLE LLP
575 7th Street NW
Washington, DC 20004

Counsel for Defendants
Enterprise Information Management, Inc.
and Bruce K. Lyman

Gary Adler
John McDermott
ROETZEL & ANDRESS
1300 Eye Street, NW
Suite 400 East
Washington D.C. 20005
Main Phone No: (202) 625-0600

Counsel for Defendant Brett M. Pfeffer

I also certify that I sent a copy of the foregoing to the above via first-class mail, postage prepaid.

/s/
Jennifer E. Dure